UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANTERNITIA O'NEAL, *et al.*, | : | Case No. 1:12-cv-971 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| ORLANDO SMITH, | : | |
| Defendant. | : | |

**ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This civil action is before the Court on Defendants' motion for summary judgment (Doc. 17) and the parties' responsive memoranda (Docs. 26, 29, 32).

### I. BACKGROUND FACTS

On November 21, 2012, while investigating heroin trafficking, Defendant Cincinnati Police officer Orlando Smith ("Smith") attempted to stop a car, driven by decedent Dontez O'Neal, and in which Plaintiff Robert Mathews ("Mathews") was a passenger. The encounter devolved rapidly into gunfire that resulted in the death of O'Neal and a gun-shot injury to Plaintiff Mathews.

Plaintiff Anternitia O'Neal is the mother of decedent O'Neal; Plaintiff Mathews is a resident of Cincinnati. Plaintiffs bring federal claims, pursuant to 42 U.S.C. § 1983, for excessive force, and state law claims for wrongful death, intentional tort, battery, murder, and spoliation of evidence.

Defendant Smith has moved for summary judgment on the theory that he is entitled to qualified immunity because his actions were reasonable as he acted in self-defense.   Having reviewed this matter, the Court agrees.

## II.  UNDISPUTED FACTS[1]

1. The incident arose during the course of a narcotics investigation.  Plaintiff Mathews was in the back seat of decedent O'Neal's car, and Mathews had just sold heroin to police in a controlled drug buy.

2. Defendant Smith activated his lights and sirens and tried to pull over the suspect vehicle.

3. Decedent O'Neal had room to pull over on Burton Avenue, but instead he pulled over and then out again.

4. Plaintiffs concede O'Neal was operating his vehicle in an attempt to flee from the police.

5. O'Neal "floored" his car toward Officer Nathan Asbury ("Asbury"), who was outside of an undercover car.

6. O'Neal backed his car into the front of the undercover car, causing Asbury to dive out of the way, because Asbury believed O'Neal's car was going to hit him.

7. O'Neal hit the undercover car hard enough that the car was pushed backwards.

8. After the crash, Asbury heard gunshots.

---

[1] *See* Docs 26 and 29.

9. After O'Neal crashed into the undercover car, O'Neal's car began moving forward.

10. When the shooting was over, Asbury observed O'Neal in the car with a gun near his hand, on the seat.  The official crime laboratory report showed O'Neal had residue on his skin evidencing that he had discharged a firearm.

11. The incident happened quickly, with a series of shots fired in seconds.

### III.     STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

3

## IV. ANALYSIS

### A. Qualified Immunity

Defendant Smith asserts that he was acting within the scope of his discretionary duties as a law enforcement officer and is therefore entitled to qualified immunity. The defense of qualified immunity completely protects government officials performing discretionary functions from Section 1983 actions when sued in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S. Ct 2727, 73 L.Ed.2d 396 (1982).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id*. at 526. As a result, the court must resolve qualified immunity questions as the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Qualified immunity extends to individuals performing discretionary functions unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A right is "clearly established if [a] reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

There is generally a two-step analysis to determine whether a police officer is entitled to qualified immunity. *Thacker v. Lawrence County*, 182 Fed. Appx. 464, 468-69 (6th Cir. 2006)(*citing Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). The first step asks whether the police officer violated a constitutional right. The second determines whether the right violated was clearly established.

Defendant Smith contends he did not violate the Constitution, citing the factors enumerated in *Graham v. Connor*, 490 U.S. 386 (1989), which courts use to evaluate use of force. The factors are 1) the severity of the crime; 2) whether the suspect posed an immediate threat to the officers or others; and 3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id*. at 396. "The calculus of reasonableness must embody allowance for the fact police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397. And when a suspect poses a threat of serious physical harm to the officer or others, an officer may use deadly force. *Hocker v. Pikeville City Police Dep't*, 738 F.3d 150, 154 (6th Cir. 2013); *see also Bell v. City of E. Cleveland*, 1997 U.S. App. LEXIS 28738 at *7 (6th Cir. 1997) (*quoting Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Plaintiffs argue O'Neal was "only suspected of dealing heroin," and that there was no immediate threat posed by O'Neal's "non-dangerous flight" (doc. 26). The Court disagrees. The facts show O'Neal escalated what could have been a simple traffic stop

5

by attempting to evade the stop, and by, at minimum, using his car as a weapon. Such tactics fall squarely within the realm of *Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014). In *Plumhoff*, the Supreme Court ruled that deadly force was appropriate to end a grave public safety risk presented by a suspect whose car, after a chase, came to a near standstill after being blocked by a police cruiser. *Id*. at 2017. The suspect pushed down on the accelerator and spun his tires, rocking back and forth in an attempt to escape. *Id*. The police fired into the car, after which it broke free and went to another street. *Id*. The police fired another twelve shots, which ultimately stopped the suspect. *Id*. at 2018.

Moreover, the risks created here by O'Neal are akin to those in *Hocker v. Pikeville City Police Dep't*, 738 F.3d 150 at 154 (6th Cir. 2013). Judge Sutton noted in such matter that "[t]he officer's responses to the escalating risks created by Hocker's actions are precisely the kinds of "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"—that they may, sometimes must, take in the line of duty." Judge Sutton continued that it makes no difference whether Hocker intended to harm the officers, but rather "it is whether a reasonable officer could perceive Hocker's actions as so dangerous to warrant the force used." *Id*. at 155.

The Court finds no Fourth Amendment claim for use of excessive force because a reasonable officer at the scene in the instant matter, who had just seen O'Neal back his car aggressively into another car, would have been justified to use deadly force to protect himself, fellow officers, and the public from a risk of serious physical harm. *See, e.g.,*

6

*Cass v. City of Dayton,* 770 F.3d 368 (6th Cir. 2014).   The Court concludes that Officer Smith reasonably acted in self-defense and thus did not violate O'Neal's right to be free from excessive force.   Smith is, therefore, entitled to qualified immunity.

   **B.  Mathews' Substantive Due Process Claim**

The remaining questions in the case are as to Plaintiff Mathews, who was shot in the arm, and the Plaintiffs' state law claims.  Constitutional tort claims asserted by persons collaterally injured by police conduct who were not intended targets of an attempted official "seizure" are adjudged according to substantive due process norms. *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708 (1998).

Fundamentally, the substantive component of the due process clause insulates citizens against the arbitrary exercise of government power. *Id.* at 1716.  Accordingly, conduct of a law enforcement officer which "shocks the conscience" denies the victim fundamental substantive due process. *Id.* at 1717.   In rapidly evolving, fluid, and dangerous situations, public servants' reflexive actions "shock the conscience" only if they involve force employed "maliciously and sadistically for the purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Id.* at 1720.

Here, the Court finds no reasonable jury could conclude that Defendant Smith's actions amounted to anything other than a good faith effort to stop O'Neal and ensure public safety.   The physical injuries were inadvertently inflicted and not due to

malicious and sadistic force. As such, there is no basis for Mathews' claim as a passenger in the car.

### C. State Law Claims

As the Court has found Defendant Officer Smith acted reasonably and in self-defense, the wrongful death claim against him is properly dismissed. *Ewolski v. City of Brunswick*, 287 F.3d 492, 517 (6th Cir. 2002). In addition, Smith is entitled to state tort immunity under Ohio Revised Code 2744.03(A)(6)(b) for state claims asserted by Plaintiffs. An officer who uses deadly force in appropriate circumstances is entitled to statutory immunity. *Kendzierski v. Carney*, C.A. No. 22739, 2005-Ohio-6735, 2005 Ohio App. LEXIS 6066, ¶27 (Court App. Ohio, Dec. 21, 2005).

Finally, Plaintiffs assert a spoliation claim with regard to the mobile video recorder in the police vehicle. Plaintiffs speculate that because Smith's vehicle was equipped to record, and because Smith wore a portable microphone on his belt, there must have been recorded evidence in Smith's control that he destroyed. The official Firearms Discharge Board Review Report simply indicates there was no video recording and the police department is exploring options to replace or purchase new recorders for all patrol vehicles. In any event, the evidence shows Smith had no access to the video recorder so as to tamper with it. The Court concludes that even if it would afford Plaintiffs the maximum adverse inference due to spoliation, no reasonable fact-finder

would find in their favor. The undisputed facts show Defendant Smith acted appropriately in self-defense

### D. Expert Report and Unsworn Interviews

Plaintiffs attached to their Response in Opposition a report prepared by Scott Spicer. The Court has reviewed such report and agrees with Defendant that it provides nothing more than hindsight analysis and legal conclusions. In particular, the Court notes that such report indicates there was no record of gunpowder residue being lifted from the hands of decedent O'Neil. However, Defendant subsequently attached such evidence to its Reply (doc. 29). In short, the Court agrees with Defendant's argument that where a single expert report relies on a contrary interpretation of all other evidence, it does not create a genuine issue of material fact. *Burdine v. Sandusky County*, No. 12-3672, 2013 U.S. App. LEXIS 7691 at *14 (6th Cir. April 16, 2013).

Plaintiffs also attached a number of unsworn witness statements to their Response. The Court finds well-taken Defendant's objection that such materials are presented in a form that would not be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

## V. CONCLUSION

The Court concludes that Defendant Officer Orlando Smith acted reasonably with regard to his November 21, 2012 stop of decedent Dontez O'Neal such that there are no viable state or federal claims against Smith, and he is entitled to qualified immunity.

9

Accordingly the Court **GRANTS** Defendant's motion for summary judgment (Doc. 17), and **DISMISSES** this case from the Court's docket.

The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

**IT IS SO ORDERED**.

Date:  2/3/15                                                                                            *s/ Timothy S. Black*
                                                                                                         Timothy S. Black
                                                                                                         United States District Judge